People v McPherson (2019 NY Slip Op 01674)





People v Mcpherson


2019 NY Slip Op 01674


Decided on March 7, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 7, 2019

108326

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
BRENDAN McPHERSON, Appellant.

Calendar Date: January 11, 2019

Before: Lynch, J.P., Clark, Mulvey, Devine and Aarons, JJ.


Norbert A. Higgins, Binghamton, for appellant, and appellant pro se.
Weeden A. Wetmore, District Attorney, Elmira (William D. VanDelinder of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered February 8, 2016, upon a verdict convicting defendant of the crime of promoting prison contraband in the first degree.
Defendant, an inmate at a state correctional facility, was indicted on a charge of promoting prison contraband in the first degree for allegedly possessing a plastic, shank-type weapon during an altercation with another inmate. Following a jury trial, defendant was convicted as charged and sentenced, as a second felony offender, to a prison term of 2½ to 5 years, to run consecutively to the prison term he was then serving. Defendant appeals.
Defendant maintains that the evidence was legally insufficient to support the verdict and the verdict was against the weight of the evidence in that the People failed to prove that he possessed the shank. He further contends that this item, which was a sharpened piece of plastic about seven inches long and one inch wide, did not constitute dangerous contraband. Initially, we note that defendant failed to preserve his legal insufficiency argument with respect to the issue of possession because his motion for a trial order of dismissal was specifically limited to the dangerous contraband contention (see People v Hawkins, 11 NY3d 484, 492 [2008]). That said, we assess defendant's possession claim under our weight of the evidence review. In that regard, we first look to see if "a different verdict would not have been unreasonable" and, if not, as here, we then "view the evidence in a neutral light and accord deference to the jury's credibility determinations in determining whether each element of the crime for which defendant was convicted was proven beyond a reasonable doubt" (People v Silcox-Mix, 159 AD3d 1060, 1061 [2018]).
The relevant question is whether defendant possessed dangerous contraband. By definition, "contraband" is any item an inmate is prohibited from possessing and "dangerous contraband" is "contraband which is capable of such use as may endanger the safety or security of [*2]a detention facility or any person therein" (Penal Law § 205.00 [4]). "[T]he test for determining whether an item is dangerous contraband is whether its particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility's institutional safety or security" (People v Finley, 10 NY3d 647, 657 [2008] [emphasis omitted]).
At trial, the People called two correction officers, Scott Perry and Jeffrey Wood, who both observed and participated in breaking up an altercation between defendant and another inmate, Carlos Jean-Baptiste. According to Wood, defendant initiated the altercation. Wood observed "an unknown white object in [defendant's] hand" and saw defendant "stabbing" Jean-Baptiste. After pulling Jean-Baptiste away, Wood observed "a white object on the floor." For his part, Perry observed defendant "making a stabbing-type motion" towards Jean-Baptiste with a "white object." As Perry pulled defendant to the ground, defendant dropped the item, which ended up "underneath him." Perry described the item as a broken off toilet brush handle sharpened to a point, with a sheath made of cellophane wrap. In contrast, defendant testified that he observed but was not involved in the altercation, an assertion backed up by Jean-Baptiste, who testified that he was fighting with another inmate and had never seen the shank before.
With due deference to the jury's credibility assessment, we find that the jury could readily conclude that defendant possessed the shank and that the verdict as to possession is not against the weight of the evidence. As to the characterization of the shank as "dangerous contraband," we find that the verdict is supported by legally sufficient evidence and accords with the weight of the evidence. Although the record shows that Jean-Baptiste only sustained two superficial cuts on his head and face during the altercation, the characteristics of the shank that was placed in evidence for the jury to see were such that it could readily be used to cause serious injury or death to another inmate.
We find defendant's claim of ineffective assistance of counsel unavailing. A decision not to facilitate a defendant's appearance before a grand jury does not equate to ineffective assistance (see People v Simmons, 10 NY3d 946, 949 [2008]). Nor has defendant demonstrated that the outcome would have been different had he and/or Jean-Baptiste testified before the grand jury (see id.; People v Zayas-Torres, 143 AD3d 1176, 1177-1178 [2016], lv denied 30 NY3d 984 [2017]). The decision by defendant's counsel not to pursue DNA testing on the shank also falls within the realm of trial strategy given the People's failure to present DNA evidence, coupled with the direct testimony of the two correction officers noted above. Further, although defendant complains that counsel failed to adequately prepare Jean-Baptiste as a witness, Jean-Baptiste corroborated defendant's testimony that defendant was not involved in the altercation.
In his pro se brief, defendant maintains that the People failed to disclose pertinent Rosario material consisting of a statement made by Wood during defendant's prison disciplinary proceeding. Specifically, defendant maintains that Wood testified that he had not seen "anything in [defendant's] hand or a weapon" in contravention of his trial testimony. This claim was first advanced by defendant during a postverdict hearing in February 2015, at which time defendant requested a copy of the hearing tape. In a follow-up appearance on March 23, 2015, the People responded that they had never received a copy of the hearing transcript, but then inquired of defendant's counsel whether the People had provided him with "a copy of the tape." Learning that defendant's counsel did not have the tape, the prosecutor then advised, "I can make a copy." The issue was addressed again on April 20, 2015, when the prosecutor again advised, "I'll make a copy." The copy was finally provided to defendant's counsel the next day.
Although the People are not under an obligation to obtain witness statements made during a prison disciplinary hearing (see People v Howard, 87 NY2d 940, 941 [1996]; People v Lewis, 167 AD3d 158, 161 [2018]), if such material is in the People's possession, an obligation to disclose arises (see CPL 240.45 [1] [a]; People v Smith, 89 AD3d 1148, 1150 [2011], lv denied 19 NY3d 968 [2012]; People v Duran, 6 AD3d 809, 811 [2004], lv denied 3 NY3d 639 [2004]). The difficulty here is that the record does not show when the People obtained the [*3]hearing tape and the actual content of that tape. Consequently, we conclude that defendant's pro se claim is more properly the subject of a CPL article 440 motion (see People v Jackson, 78 NY2d 638, 645-646 [1991]; People v Greenfield, 167 AD3d 1060, 1063 [2018]).
Clark, Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.